759 A.2d 372

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Belisario POLO, Appellee.**

Supreme Court of Pennsylvania.

Argued April 29, 1998.

Decided Oct. 2, 2000.

Mark Pazuhanich, Dist. Atty., E. David Christine, Stroudsburg, for Com.

Robert Rosenblum, Stroudsburg, for Belisario Polo.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This case presents the issue of whether the Pennsylvania Constitution prohibits the random stopping of a vehicle to conduct a drug interdiction investigation in the absence of reasonable suspicion or probable cause.[1] We conclude that

---

**1.** We note that Appellee, the defendant below, originally asserted claims under both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution. Our discussion, however, is limited to an analysis under Article I, Section 8. The dissent would hold that Appellee has not preserved his claim under the Pennsylvania Constitution because he failed to file a cross-appeal preserving that claim. However, as the dissent recognizes, Appellee's argument to Superior Court relied upon both the Pennsylvania and the United States constitutions. Dissenting Op. at 1. Upon prevailing in Superior Court there is no requirement that Appellee file a cross-appeal in order to preserve his state constitutional claim. In fact, only an aggrieved party can appeal from an order entered by the lower court. Pa.R.A.P. 501; *In re Elliott's Estate,* 388 Pa. 321, 131 A.2d 357, 358 (1957); *see also Green by Green v. SEPTA,* 380 Pa.Super. 268, 551 A.2d 578, 579 (1988) (citations omitted) ("[T]o be 'aggrieved' a party must have been adversely affected by the decision from which the appeal is to be taken.

such a stop is unlawful under Article I, Section 8 of the Pennsylvania Constitution. For the following reasons, we affirm Superior Court's order suppressing the evidence obtained during the course of the investigation.

On September 22, 1995, a Greyhound bus on which Appellee was a passenger approached the tollbooth at the Delaware Water Gap interchange while traveling westbound on Interstate 80. Amid the traffic at the tollbooth, Agent Ronald Paret of the Pennsylvania Office of Attorney General and Officer Kirk Schwartz of the Delaware Water Gap Police Department approached the bus and requested that the driver pull to the side of the road after paying the toll. Both officers were wearing attire indicating that they were law enforcement officials. After paying the toll, the bus driver pulled over.

Agent Paret asked the driver if he could see the passengers' tickets. A review revealed one "quick turn" ticket from Cleveland to New York City and back, which indicated that the purchaser spent only about eight hours in New York. Agent Paret then boarded the bus, accompanied by Officer Schwartz. Officer Schwartz secured the bathroom on the bus, which revealed nothing, while Agent Paret approached Appellee, who had the other half of the quick turn ticket. Agent Paret asked Appellee for identification to which Appellee responded that he had none. Agent Paret then asked Appellee if he had any bags. Appellee stated that he did not.

The officers went on to match every bag on the bus with a passenger except for one, which Appellee then claimed as his. Agent Paret and Officer Schwartz then approached Appellee together and asked if they could search the bag. Appellee responded "okay," and Agent Paret located crack cocaine in the bag. Appellee was then arrested.

Appellee filed a motion to suppress the evidence obtained by Officer Schwartz and Agent Paret. The trial court denied the motion finding that the interaction between Appellee and the officers was a mere encounter which did not require any

Generally, a prevailing party is not 'aggrieved,' and, therefore, does not have standing to appeal an order which has been entered in his or her favor.")

degree of suspicion on the part of the officers. The court did not address the issue of whether the officers' initial stop of the bus, which was not based upon reasonable suspicion or probable cause, was valid. Following a jury trial, Appellee was convicted of possession of a controlled substance and possession of a controlled substance with intent to deliver.

On appeal, the Superior Court reversed the trial court holding that the officers illegally detained the bus and that Appellee's consent to search his bag was necessarily tainted by the illegal stop of the bus.[2] Thus, the court concluded that the evidence obtained from the seizure of Appellee and the search of his bag should have been suppressed. The court vacated the judgment of sentence and remanded to the trial court for further proceedings.[3] We granted the Commonwealth's petition for allowance of appeal.

█ Our standard of review, when reviewing a suppression ruling, is to determine whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error. *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153 (2000).

We begin our discussion by noting that Article I, Section 8 of the Pennsylvania Constitution ensures that:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

**2.** The Superior Court found that the officers' stopping of the bus violated the Fourth Amendment to the United States Constitution. Accordingly, the court did not address the issue pursuant to Article I, Section 8 of our constitution. As noted previously, we limit our discussion to a review under Article I, Section 8.

**3.** The Superior Court panel's memorandum decision in this case was a plurality opinion. We note, however, that the Superior Court sitting en banc addressed the identical issue in *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa.Super.1999), and held that the stop of a bus to permit police officers to conduct a drug interdiction investigation was illegal in the absence of reasonable suspicion or probable cause to believe that an individual on the bus was transporting narcotics.

In *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619, 624–25 (1994), citing *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 894–95, we set forth the historical framework of the heightened privacy interest protected by Article I, Section 8. We stated:

"It is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution each time a provision of that fundamental document is implicated." Therefore, we do not rest our decision solely on federal constitutional grounds, for we hold also that the seizure and search of the Appellants violated Article I, Section 8 of the Pennsylvania Constitution. We emphasize that the state constitutional protections afforded under Article I, Section 8 provide an independent basis for concluding that the seizure and search were invalid. See *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

We undertook an extensive analysis of the unique history of Article I, Section 8 in *Commonwealth v. Edmunds*, supra, in which we stated,

The requirement of probable cause in this Commonwealth thus traces its origin to its original Constitution of 1776, drafted by the first convention of delegates chaired by Benjamin Franklin. The primary purpose of the warrant requirement was to abolish "general warrants," which had been used by the British to conduct sweeping searches of residences and businesses, based upon generalized suspicions. Therefore, at the time the Pennsylvania Constitution was drafted in 1776, the issue of searches and seizures unsupported by probable cause was of utmost concern to the constitutional draftsmen.

526 Pa. at 394, 586 A.2d 887, 897 (1991)(Citations omitted). We reiterated our statement in *Commonwealth v. Sell*, 504 Pa. 46, 65, 470 A.2d 457, 467 (1983), that "the survival of the language now employed in Article I, Section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth."

 With this background in mind, we now turn to the matter before us. Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. *Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117 (1998).

 Here, the Commonwealth argues that the stopping of the bus constituted a mere encounter since the bus driver voluntarily pulled the bus over to the side of the road at the officers' request. Thus, the Commonwealth maintains that the stop of the bus did not constitute an illegal detention, as found by the Superior Court, as it was not the unilateral conduct of the police that detained the bus, but rather the bus driver's voluntary decision to cooperate with police.

Conversely, Appellee argues that the stop of the bus constituted an illegal detention since the officers requested the bus driver to pull to the side of the highway, which was not a scheduled stop or depot, without any reasonable articulable facts that criminal activity was afoot.

We agree with Appellee that the stop of the bus constituted an investigative detention since the purpose of the stop, as conceded by the officers, was for the purpose of conducting a drug interdiction investigation. Agent Paret testified that the sole purpose for his and Officer Schwartz's presence at the toll plaza was to conduct such investigation. N.T. March 19, 1996 at 5. The Commonwealth failed to present any evidence indicating that the officers had reasonable suspicion or probable cause to believe that illegal activity was occurring on the bus.

Agent Paret failed to offer testimony as to whether the officers had any information to suspect that this bus, or its passengers, was harboring contraband. Moreover, there was no evidence that a suspected motor vehicle code violation was the reason for the stop.

Because the stop of the bus was unsupported by reasonable suspicion or probable cause, we find that the stop constituted an illegal investigative detention. In *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), we rejected the argument that a police officer could stop the driver of an automobile without having observed a violation of the motor vehicle code. We noted that the stopping of a vehicle and the detention of its passengers constituted a seizure implicating the constitutional prohibition against unreasonable searches and seizures. We stated:

> before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever.

*Swanger*, 307 A.2d at 878.

Where, as here, there was no indication of criminal activity or a motor vehicle code violation, there is absolutely no justification for the intrusion. We decline to adopt the arguments offered by the Commonwealth that under the facts of this case no reasonable suspicion or probable cause was required before the officers approached the bus.

We must be mindful not to disregard our constitutionally guaranteed right of privacy encompassed within Article I, Section 8 in our zeal to eliminate criminal conduct. In discussing the Superior Court's adoption of an "end justifies the means" analysis in *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992), we noted in *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996), that:

> Less than three years ago, this Court, in *Commonwealth v. Rodriquez*, rejected the contention that the goal of curtailing the drug trade permits the expansion of police intrusion

without the constitutional justification of reasonable suspicion or probable cause:

We emphatically reject the Superior Court's "end justifies the means" analysis. By focusing its attention only upon the serious ills inflicted upon society by illegal narcotics, the Superior Court failed to recognize and respond to necessary constitutional constraints on excessive police conduct. The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.

*Matos,* 672 A.2d at 775–76.

Based on the foregoing, we affirm the order of the Superior Court.

Justice SAYLOR files a concurring and dissenting opinion in which Justice CASTILLE joins.

Justice NEWMAN files a dissenting opinion.

NEWMAN, Justice, dissenting.

I respectfully dissent because I believe that the Pennsylvania Constitutional claims are not properly before us and the encounter at issue here did not violate Appellee's Fourth Amendment rights. Although Appellee Polo challenged the questioning by the police based on Pennsylvania Constitutional grounds in his appeal to the Superior Court, he did not provide a separate argument. Because the Superior Court concluded that he was entitled to relief based on the Fourth Amendment of the United States Constitution, it did not reach the Pennsylvania Constitutional claim. The Commonwealth is the Appellant in the current appeal and did not address or raise the Pennsylvania Constitutional issue in its statement of the questions involved or statement of the case. Pa. R.App. P. 2111. Polo did not add a counter-statement of the questions involved or a counter-statement of the case; he did not focus

on the Pennsylvania claims in his brief, and did not file a cross-appeal to preserve the Pennsylvania claim. Rule of Appellate Procedure 2112 provides that "unless the appellee does so ... it will be assumed the appellee is satisfied with [the issues presented by the Appellant], or with such parts of them as remain unchallenged." *Id.* Accordingly, we should decide this case strictly on Fourth Amendment grounds.[1]

Applying Fourth Amendment jurisprudence here, I cannot discern any basis to support the Superior Court's reversal of the trial court. In reviewing a suppression ruling, we first decide whether the record supports the factual findings. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111, *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). Where the defendant appeals the denial of suppression, we consider only the prosecution's evidence and that portion of the defendant's evidence that, when read in context of the record as a whole, remains uncontradicted. *Id.* We are bound by the facts that the record supports and we may only reverse if the legal conclusions that the suppression court drew from them are in error. *Id.* Agent Paret was the only witness to testify at the suppression hearing. Because the facts of the case are not in dispute here, we now turn to whether the trial court reached the correct conclusion of law.

The Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures ..." This amendment protects against *unreasonable* searches and seizures but does not prohibit every encounter between police and citizens. Police officers are permitted "to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so

---

1. In footnote two, the majority contends that Appellee preserved his Pennsylvania constitutional claim because he raised the issue before the Superior Court, and therefore it is appropriate for this Court to review the issue. My criticism, however, is that regardless of whether an issue has been preserved, we should nevertheless limit our review to the issue for which we granted the Commonwealth's Petition for Allowance of Appeal—namely, whether the Superior Court correctly decided this case on Fourth Amendment grounds.

long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick,* 501 U.S. 429, 431, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). It is only when the officer, through physical force or a show of authority, restrains the liberty of the citizen that a seizure occurs. *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As long as the police do not imply that compliance is required, they are permitted to ask general questions, to request to see identification, and even to request consent to search baggage. *See Florida v. Bostick, supra; INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

In *Florida v. Bostick,* a case factually similar to the present case, two officers boarded a bus bound for Atlanta from Miami during a scheduled stopover in Fort Lauderdale. The officers donned badges and one was holding a recognizable zipper pouch containing a pistol. They randomly, without articulable suspicion, asked Terrance Bostick to see his ticket and identification. After inspecting both, they returned them to Bostick. The officers explained that they were narcotics agents looking for illegal drugs and requested consent to search Bostick's bags but informed him that he could refuse. Bostick consented and the officers found cocaine in the bag. *Bostick,* 501 U.S. at 431–32, 111 S.Ct. 2382. He was charged with trafficking in cocaine and moved to suppress the cocaine claiming the seizure violated his Fourth Amendment rights. The trial court denied his suppression motion. *Id.* at 432, 111 S.Ct. 2382. Bostick then plead guilty, although he reserved the right to appeal the denial of his suppression motion. *Id.*

The Florida District Court of Appeals affirmed, however it certified the question to the Florida Supreme Court, which reversed. *Id.* at 432–33, 111 S.Ct. 2382. The Florida high court concluded that a reasonable person in Bostick's situation would not have felt free to leave the bus. *Id.* at 433, 111 S.Ct. 2382. In so concluding, it set forth a *per se* rule that " 'an impermissible seizure result[s] when police mount a drug search on buses during scheduled stops and question boarded passengers without articulable reasons for doing so, thereby

obtaining consent to search the passengers' luggage.'" *Id.* (quoting *Bostick v. Florida,* 554 So.2d 1153 (Fla.1989)).

The United States Supreme Court rejected this *per se* rule based on a Fourth Amendment analysis and remanded the case to the Florida court to apply the correct legal standard. Initially, the Court noted that "[t]here is no doubt that if this same encounter had taken place before Bostick boarded the bus or in the lobby of the bus terminal, it would not rise to the level of a seizure." *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382. The Court therefore looked at the effect of the location of the encounter on the determination of whether a seizure took place. In this regard, the Court declined to apply the "free to leave" test [2] and instead stated the following:

> The state court erred, however, in focusing on whether Bostick was "free to leave" rather than on the principle that those words were intended to capture. When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter.

> Here, for example, the mere fact that Bostick did not feel free to leave the bus does not mean that the police seized him. Bostick was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. Bostick's movements were "confined" in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive.

*Id.* at 435–36, 111 S.Ct. 2382. Bostick's "freedom of movement" was a result of a factor independent of the police action, therefore, it was only one of many factors to be considered in the determination of whether a seizure took place. The

---

2. The test previously applied was whether a reasonable person in the citizen's position would have felt free to leave. *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

appropriate inquiry to reach this determination is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 437, 111 S.Ct. 2382.

Thus here, contrary to the Superior Court's holding, the single fact that the officers asked the driver of the bus if he would pull the bus to the side of the road once he cleared the tollbooth could not alone constitute a seizure of the entire bus and its passengers. *Bostick.* The location of the bus is but one factor to consider within the totality of the circumstances. *Id.* Other relevant factors include the number of officers present, the display of weapons, physical touching of the citizen, the officer's tone of voice, and the questions asked. *Id.* There is no indication in the case *sub judice* that the officers displayed their weapons, physically touched Polo, or that they spoke to him, or the other passengers, in a way that would convey to the reasonable person that he or she was compelled to answer questions and comply with requests. Furthermore, the officers did not request to search Polo's bag until after they had questioned all other passengers. Thus, they dispelled any suggestion that Polo was being singled out from the other passengers. It was only after Polo voluntarily claimed possession of the bag that the officers requested consent to search it. Polo freely gave his consent. The fact that the officers boarded the bus while it was temporarily stopped at a tollbooth does not, by itself, render this encounter a seizure. The officers were in a place where they were lawfully permitted to be, and they did not engage in any coercive or threatening behavior.

Accordingly, I agree with the trial court that a reasonable person in Polo's position would have felt free to decline to answer the officers' questions. No seizure in violation of the Fourth Amendment occurred; therefore, the officers did not need reasonable suspicion that criminal activity was afoot.[3]

3. I note that the recent decision in *Bond v. United States,* 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) does not change the analysis. In that case, a border patrol agent boarded a bus to check immigration status of passengers. As the agent walked off the bus, he squeezed soft-

Accordingly, I would reverse the Order of the Superior Court and reinstate the conviction and judgment of sentence.

SAYLOR, Justice, concurring and dissenting.

I join in the majority's disposition, as I believe that the seizure of contraband from Appellee's bag was tainted by an illegal detention under Fourth Amendment jurisprudence. In this regard, the applicable test, set forth in *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), is whether, in the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Id.* at 439, 111 S.Ct. at 2389.[1] Regardless of the ostensible consent of a bus driver, I believe that there are sufficient indicia of coercion present—the interruption of the normal activity of a commercial bus by removing it from the stream of traffic at a highway tollbooth, boarding of the bus by law enforcement officers, searching through passenger tickets and questioning of occupants without advising them that they are free to decline consent—to cause a reasonable person to believe that he was not free to refuse consent or otherwise terminate the encounter. *Accord*

sided luggage placed in the overhead storage compartment and detected a brick-like substance. The passenger, at the agent's request, consented to a search of the bag. The material turned out to be drugs. The issue certified to the United States Supreme Court was whether the agent's tactile manipulation of the passenger's bag, *without consent*, was an unreasonable search. The Supreme Court held that it was, rejecting the government's contention that the passenger had lost any expectation of privacy in the bag because it was exposed to the public. Unlike the matter before us now, there was no argument in *Bond* that the defendant's consent to the search was a basis for admitting the evidence, and there was no argument that *Florida v. Bostick* was inapplicable.

1. Generally, the test to determine whether a seizure has occurred under the Fourth Amendment entails consideration of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. *See Commonwealth v. Strickler*, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000). The United States Supreme Court, however, has devised the above, modified analysis for application in circumstances in which factors independent of police conduct restrict a subject's freedom of movement, such as when the person is a passenger on a bus.

*United States v. Cuevas–Ceja*, 58 F.Supp.2d 1175, 1187–88 (D.Or.1999). *But see United States v. Hernandez–Zuniga*, 215 F.3d 483, 488–89 (5 th Cir.2000), *cert. pending*, No. 00–5362 (Jul. 24, 2000).[2] Since the Pennsylvania Constitution guarantees at least as much protection as is available under the United States Constitution, I do not see a need to depart from the federal construct in this case. Significantly, Appellee did not provide an analysis under *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), that would justify a departure from the prevailing totality-of-the-circumstances analysis or develop empirical evidence of record concerning additional considerations that may be relevant to the imposition of a *per se* rule. *Cf. Strickler*, 563 Pa. at 80 & n. 28, 757 A.2d at 902 & n. 28. Under such circumstances, the Court has in the past deferred consideration of expanded protections under the Pennsylvania Constitution, *see, e.g., id.,* and I would do likewise in this case.

Justice CASTILLE joins this concurring and dissenting opinion.

**2.** The majority's approach diverges from the federal constitutional analysis in several respects. First, its initial focus is upon the officers' subjective purpose for the stop (drug interdiction); whereas, the United States Supreme Court has maintained that such motivations are generally irrelevant to the determination of whether a seizure has occurred. *See Ohio v. Robinette,* 519 U.S. 33, 38, 117 S.Ct. 417, 420, 136 L.Ed.2d 347 (1996)(citing *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996)). Additionally, the majority's assessment hinges upon the vehicle stop alone, without a totality assessment concerning its impact upon a reasonable passenger's perceptions. It is unclear, however, whether federal jurisprudence would always foreclose an encounter which entails the stopping of a vehicle on a consensual basis, even where the police have the ability to communicate with the driver to obtain his consent without employing coercive means. *See generally Hernandez–Zuniga,* 215 F.3d at 488–89 (holding that a warrantless stop of a bus was reasonable, in light of the bus company's consent to random stops). Indeed, the majority's approach seems tantamount to application of a *per se* rule, which has been eschewed by the United States Supreme Court in the Fourth Amendment context. *See, e.g., Bostick,* 501 U.S. at 437–38, 111 S.Ct. at 2388; *see also Robinette,* 519 U.S. at 39, 117 S.Ct. at 421.