J-S28017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS LOPEZ | |
| Appellant | No. 1078 WDA 2016 |

Appeal from the Order June 23, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002525-2015

BEFORE:  OLSON, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:                **FILED AUGUST 11, 2017**

Luis Lopez appeals from the June 23, 2016 judgment of sentence entered in the Erie County Court of Common Pleas following his bench trial conviction for carrying a firearm without a license.[1]  We affirm.

On June 25, 2015, a confidential informant ("CI") contacted Erie Police Officer Jason Russell.  The CI, who had previously provided credible information to police, told Officer Russell that "two individuals on the city's upper west side . . . were currently in possession of firearms."  N.T., 12/16/15, at 8.  The CI named Lopez as one of the individuals.  *Id.* at 9.  Based on prior interactions with Lopez, Officer Russell knew that Lopez was

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1).

ineligible for a firearm license because he was under 21. *Id.* Officer Russell also knew the general area where Lopez could be located. *Id.*

Officer Russell and his partner, Officer Ginkel,[2] headed to the Little Italy section of Erie's upper west side, which, according to Officer Russell, is a high-crime area. *Id.* at 7, 10. Within ten to fifteen minutes, the officers located Lopez seated in front of a residence. *Id.* The officers exited the car and asked Lopez "what's going on," to which Lopez responded "what's up?" *Id.* at 12. Officer Russell then asked Lopez if he had "any firearms or weapons on [him.]" *Id.* Lopez immediately turned and fled up an enclosed flight of stairs that led to an apartment. *Id.* Officer Russell gave chase, during which he saw Lopez reach "downward along his midline toward the center of his body with his right hand." *Id.* at 13. As Lopez crossed the threshold of the apartment, Officer Russell saw Lopez's right elbow move "upwards and outwards away from [Lopez's] body," revealing a small black pistol in Lopez's right hand. *Id.* at 14. Once Officer Russell entered the apartment, he tackled Lopez into the bathroom area and both men fell into the bathtub. *Id.* at 15. Officer Russell arrested Lopez and secured the firearm. *Id.*

On November 25, 2015, Lopez filed a pretrial motion to suppress the firearm. In his motion, Lopez argued that Officers Russell and Ginkel lacked

---

[2] Officer Ginkel's first name is not in the certified record.

reasonable suspicion to stop him. After a December 16, 2015 suppression hearing, the trial court denied Lopez's motion. On May 11, 2016, Lopez proceeded to a non-jury trial, after which he was convicted of the aforementioned offense. On June 23, 2016, the trial court sentenced Lopez to 15 to 30 months' incarceration followed by 3 years' probation. On July 22, 2016, Lopez timely appealed to this Court.

On appeal, Lopez asserts that the trial court erred in denying his motion to suppress the firearm. In reviewing the denial of a suppression motion, we must determine

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

Lopez argues that Officers Russell and Ginkel seized him and, as a result, the officers had to have reasonable suspicion that criminal activity

was afoot. According to Lopez, the officers lacked reasonable suspicion because Officer Russell did not explain the circumstances by which the CI gained information that Lopez was carrying a firearm and because nothing about the officers' initial contact with Lopez would lead to reasonable suspicion of criminal activity.

The trial court concluded that Officer Russell's initial contact with Lopez was a mere encounter and, as a result, Loped was not seized. The trial court also found that once Lopez fled, Officer Russell possessed reasonable suspicion to seize Lopez, as Lopez's "unprovoked flight in a high[-]crime area, along with knowledge that [Lopez] was recently observed with a firearm, provided Officer Russell with reasonable suspicion to detain [Lopez]." Opinion, 1/15/16, at 3.

The investigation of possible criminal activity invariably brings police officers in contact with members of the public. Depending on the circumstances, a police-citizen encounter may implicate the liberty and privacy interests of the citizen as embodied in both the federal constitution, *see* U.S. Const. art. IV,[3] and our state constitution, *see* Pa. Const. art. I, §

---

[3] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

*(Footnote Continued Next Page)*

8.[4]  The law recognizes three distinct levels of interaction between police officers and citizens:  (1) a mere encounter; (2) an investigative detention; often described as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1968); and (3) a custodial detention.  *See Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen.  The hallmark of this interaction is that it carries no official compulsion to stop or respond," *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super. 2000) (citation and quotation omitted), and therefore need

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

> place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[4] Our Supreme Court has held that "the Fourth Amendment [of the United States Constitution] and Article I, [Section] 8 [of the Pennsylvania Constitution] are coterminous for *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] purposes."  *Commonwealth v. Chase*, 960 A.2d 108, 118 (Pa. 2008). Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

not be justified by any level of police suspicion, **Commonwealth v. Polo**, 759 A.2d 372, 375 (Pa. 2000).

An investigative detention "constitutes a seizure of a person and activates the protections of the Fourth Amendment." **Commonwealth v. Baldwin**, 147 A.3d 1200, 1203 (Pa.Super. 2016). To determine whether and when a seizure has occurred, we employ "an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." **Commonwealth v. Strickler**, 757 A.2d 884, 889 (Pa. 2000) (citations omitted).

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

**Id.** at 890 (internal citation and footnotes omitted).

We agree with the trial court that Officer Russell's initial contact with Lopez was a mere encounter. When Officer Russell stopped his cruiser in front of the residence, he did not have his emergency lights engaged, did not tell Lopez to "stop," and did not draw his service weapon. Rather, he exited the vehicle and asked Lopez "what's going on" and whether he was carrying a firearm. Under similar circumstances, this Court has concluded "that the approach of a police officer followed by questioning does not constitute a seizure." **Commonwealth v. Coleman**, 19 A.3d 1111, 1116

(Pa.Super. 2011) (finding mere encounter where police officer approached robbery suspect and asked suspect whether he was armed).

Officer Russell, however, later seized Lopez,[5] which was an investigative detention that required Officer Russell to possess reasonable suspicion. An officer may stop and briefly detain a person for investigatory purposes when that officer has "reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *Commonwealth v. Allen*, 725 A.2d 737, 740 (Pa. 1999). "[T]he fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa.Super. 2001). We must consider the totality of the circumstances, including such factors as "tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Id.* (citing *Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000)).

Our Supreme Court addressed a nearly identical set of circumstances in *In re D.M.*, 781 A.2d 1161 (Pa. 2001). There, police received a radio call identifying a man with a gun in a specific high-crime area; the call "included

---

[5] For the purposes of this appeal, we presume that Lopez was seized as soon as Officer Russell gave chase. *See Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999) ("a police officer's pursuit of a person fleeing the officer [is] a seizure for purposes of Article 1, Section 8 of the Pennsylvania Constitution") (citing *Commonwealth v. Matos*, 672 A.2d 769, 776 (Pa. 1996)).

a description of the 'man with a gun' as a black male, wearing a white t-shirt, blue jeans and white sneakers." *Id.* at 1162. A police officer responded and located D.M., who matched the radio description. *Id.* When the officer "exited his vehicle and told [D.M.] to come over," D.M. fled. *Id.* A back up officer apprehended and frisked D.M., finding a handgun. *Id.* D.M. moved to suppress the handgun, arguing that he was seized when the officer asked him to "come over" and the officer lacked reasonable suspicion to stop him. *Id.* Our Supreme Court disagreed, concluding that D.M. was only seized when the officer attempted to effectuate the stop and that D.M's flight in a high-crime area along with the anonymous caller's information provided the officer reasonable suspicion to stop D.M. *Id.* at 1165.

We conclude that *D.M.* controls the outcome of this case. Like D.M., Lopez was not seized until after he fled and Officer Russell gave chase. In addition, like the officer in *D.M.*, Officer Russell had reasonable suspicion when he seized Lopez because: (1) Officer Russell had credible information that Lopez was carrying a firearm; (2) Officer Russell knew that Lopez was under 21 and thus ineligible to hold a permit to carry a concealed firearm; (3) Lopez was in a high-crime area;[6] and (4) Lopez fled unprovoked by

---

[6] We agree with the concurring memorandum that individuals living in high-crime areas do not have fewer rights than people living elsewhere. However, both our Supreme Court and the United States Supreme Court have made clear that location can be relevant to the assessment of reasonable suspicion. *See D.M.*, 781 A.2d at 1164; *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000). We reference Lopez's location because it

*(Footnote Continued Next Page)*

police. Accordingly, Officer Russell lawfully seized Lopez, and the trial court correctly denied Lopez's motion to suppress.

Judgment of sentence affirmed.

Judge Olson joins in the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2017

_(Footnote Continued)_ ───────

was a relevant factor in the trial court's analysis. Nevertheless, our decision should not be read as holding that, had the events taken place in a "low crime" neighborhood, Officer Russell would have lacked reasonable suspicion for the seizure.