J-S61039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KARL WILLIAMSON, | |
| Appellant | No. 2687 EDA 2015 |

Appeal from the Judgment of Sentence August 6, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0001215-2014

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED DECEMBER 07, 2017**

Appellant, Karl Williamson, appeals from the judgment of sentence imposed after a stipulated bench trial in which the trial court found him guilty of possession with intent to deliver a controlled substance, knowing or intentional possession of a controlled substance, possession of drug paraphernalia, and fleeing or attempting to elude the police.  Specifically, he challenges the denial of his motion to suppress.  We affirm.

The suppression court summarized the pertinent facts of the case as follows:

> At approximately 2:00 P.M. on November 21, 2013, Philadelphia Police Officer Michael Berkery was conducting a routine patrol in the area of the 4700 block of Longshore Avenue

_____

[*] Retired Senior Judge assigned to the Superior Court.

in the City and County of Philadelphia. Officer Berkery observed [Appellant] driving a black Lincoln Navigator past him. Officer Berkery observed that the vehicle had heavy tint on all windows except the windshield. Specifically, Officer Berkery noted that the tint was dark enough that he could only see a figure inside of the vehicle, but could not "make out" [Appellant]. [Appellant] had pulled the Navigator into a parking spot. Officer Berkery's partner exited the vehicle and approached the driver's side of the Navigator. The police vehicle's lights and sirens were not activated. Officer Berkery's partner knocked on the window and asked [Appellant] twice to roll down his window. Instead, [Appellant] pulled out of the parking space at a high rate of speed. The officers then pursued [Appellant] through several turns to the 6900 block of Tulip Street, a total distance of approximately three blocks. . . . Officer Berkery described the area as **a high narcotics area** of the city. In making a credibility determination, [the suppression] **court found Officer Berkery credible in all respects**.

(Supplemental Opinion, 11/17/16, at 1-2) (record citations omitted) (emphases added).

The factual history of the case is continued in the trial court's opinion:

After following [Appellant] with activated lights and sirens, the officers stopped [Appellant], who then proceeded to exit the vehicle. The officers pursued [Appellant] on foot. As [Appellant] was running, he threw a small black bag on the highway. [Appellant] continued fleeing by jumping fences and the sort. Officers retrieved the bag on the highway and took the keys out of [Appellant's] vehicle. [Appellant] did not stop until he was tased by the officer and was commanded to stop and get on the ground. After that, he continued to run and was finally caught by officers and placed into custody. Inside the black bag was one clear sandwich bag with a large off-white chunky substance confirmed to be cocaine or heroin. There was also a small bag noted to have offwhite powder also alleged to be heroin.

[On s]earch incident to arrest, the officer recovered a razor blade in [Appellant's] pocket and a small clear bag with unused baggies. Recovered from the front seat of the vehicle was a scale and a couple thousand additional new and unused baggies. All of the narcotics were placed on a property receipt 3126678.

The paraphernalia was placed on 3126679. The total weight the [sic] of the cocaine was 6.296 grams and the total weight of the heroin was 0.118 grams.

(Trial Court Opinion, 11/08/16, at 2-3) (record citations omitted).

The trial court found Appellant guilty of all charges, as previously noted. (*See id.* at 3). On August 6, 2015, the court sentenced him to a term of not less than nine nor more than twenty-three months of incarceration followed by a four-year period of reporting probation. This timely appeal followed.[1]

Appellant presents one question on appeal.

> Did not police [sic] lack reasonable suspicion that [A]ppellant committed a motor vehicle code violation or any other crime, and therefore did not the initial stop and subsequent pursuit of [A]ppellant violate his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

(Appellant's Brief, at 3).

Our standard of review is well-established:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's

---

[1] Appellant filed a court-ordered statement of errors on December 29, 2015. The trial court filed an opinion on November 8, 2016. The suppression court filed an opinion on November 17, 2016. *See* Pa.R.A.P. 1925.

factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151–52 (Pa. Super. 2015),

*appeal denied*, 138 A.3d 3 (Pa. 2016) (citations omitted).

When reviewing an order denying suppression, **this Court must review the record in the light most favorable to the Commonwealth, as verdict winner**, and determine whether the trial court's factual findings are supported by the record. Provided that there is support in the record for the court's factual findings, this Court will not reverse the order denying suppression unless the legal conclusions drawn from those facts are in error.

*Commonwealth v. Rickabaugh*, 706 A.2d 826, 832–33 (Pa. Super. 1997),

*appeal denied*, 736 A.2d 603 (Pa. 1999) (citations omitted) (emphasis

added).

It is well[-]settled that the purpose of both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution is to protect citizens from unreasonable searches and seizures. In the seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court indicated that police may stop and frisk a person where they had a reasonable suspicion that criminal activity is afoot. **In order to determine whether the police had a reasonable suspicion, the totality of the circumstances—the whole picture—must be considered.** *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417–18, 101 S. Ct. 690. Pennsylvania

courts have consistently followed *Terry* in stop and frisk cases, including those in which the appellants allege protections pursuant to Article 1, Section 8 of the Pennsylvania Constitution.

*In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) (some citations omitted) (emphasis added).

There are three relevant cognizable categories of interactions between persons and police: a mere encounter, an investigative detention, and a custodial detention or arrest. ***Commonwealth v. Polo****,* 563 Pa. 218, 759 A.2d 372, 375 (2000). A mere encounter need not be supported by any level of suspicion, and does not require a person to stop or respond. ***Id.*** An "investigative detention," or ***Terry*** stop, must be supported by reasonable suspicion; it subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. ***Id****.* An arrest or custodial detention must be supported by probable cause. ***Id.*** "Pennsylvania courts have consistently followed ***Terry*** in stop and frisk cases, including those in which the appellants allege protections pursuant to Article I, [§] 8. . . ." ***In the Interest of D.M.****,* [***supra***] at 1163 (citing ***Commonwealth v. Cook****,* 558 Pa. 50, 735 A.2d 673, 677 (1999); ***Commonwealth v. Jackson****,* 548 Pa. 484, 698 A.2d 571, 573 (1997)); ***see also Commonwealth v. Wimbush****,* 561 Pa. 368, 750 A.2d 807, 810 n. 2 (2000) ("Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases.") (citing ***Jackson****,* at 574; ***Commonwealth v. Melendez****,* 544 Pa. 323, 676 A.2d 226, 230 (1996) (***Terry*** stop constitutional under Article I, § 8)). Relying on that language from ***In the Interest of D.M.****,* we noted an investigative detention under the Fourth Amendment and Article I, § 8 "is coterminous." ***Commonwealth v. Revere****,* 585 Pa. 262, 888 A.2d 694, 699 n. 6 (2005). **Thus, vehicle stops that are constitutional under *Terry* are constitutional under Article I, § 8.**

*Commonwealth v. Chase*, 960 A.2d 108, 117 (Pa. 2008) (emphasis added). Furthermore,

**Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer.** In a *Terry* stop, the officer may

- 5 -

ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. **A finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts. Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable**.

*Id.* at 120 (citations and quotation marks omitted) (emphases added).

[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a *Terry* analysis. *Adams v. Williams*, 407 U.S. 143, 144, 147–148 [ ] (1972).

In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his **unprovoked flight** upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. **Headlong flight—wherever it occurs—is the consummate act of evasion**: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. *See* [ ] *Cortez*, [*supra* at] 418.

*Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) (some citations omitted) (emphases added).

In Pennsylvania, a police officer has authority to stop a vehicle when he or she has reasonable suspicion that a violation of the Motor Vehicle Code is occurring or has occurred. Our Supreme Court defines reasonable suspicion as:

a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, **a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot.** In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to **specific and articulable facts** which led him to reasonably suspect a violation of the Motor Vehicle Code[.]

*Commonwealth v. Holmes*, 609 Pa. 1, 14 A.3d 89, 95–96 (2011) (internal citations omitted) (emphasis in original). "[W]hether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Id.* at 96.

*Commonwealth v. Farnan*, 55 A.3d 113, 116 (Pa. Super. 2012) (one footnote omitted).

Our Vehicle Code provides, in pertinent part:

**Sun screening and other materials prohibited.—**

No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

75 Pa.C.S.A. § 4524(e)(1).

In this appeal, Appellant maintains that the police lacked reasonable suspicion of a Vehicle Code violation to initiate a stop, in violation of his constitutional rights. (*See* Appellant's Brief, at 9). We disagree.

Appellant argues chiefly that there was no reasonable suspicion to stop him because Officer Berkery testified that he and his partner could see a shadowy figure inside the vehicle. (*See id.* at 12; *see also* N.T. Motion, 9/23/14, at 11 ("You could see a figure, but you couldn't make it out clearly because how dark [sic] it was.")).

In support, Appellant cites *Commonwealth v. Brubaker*, 5 A.3d 261, 263 (Pa. Super. 2010) ("[Y]ou could see figures in the vehicle. You could see there was a driver."). (*See* Appellant's Brief, at 12). Appellant's reliance is misplaced.

Initially, we note that *Brubaker* is a challenge to the sufficiency of the evidence for his conviction of violation of 75 Pa.C.S.A. § 4524(e)(1). *See Brubaker*, *supra* at 262. This appeal, in contrast, challenges only the denial of a motion for suppression. Different standards of review apply. We review the denial of suppression not to establish the sufficiency of the evidence for conviction, but only to decide if the suppression court properly determined that the police had reasonable suspicion that a violation of the Vehicle Code was occurring or had occurred. *See Farnan*, *supra* at 116.

Next, we note that Appellant quotes a single pair of phrases, out of total context, to support the unwarranted inference that the mere visualization of a figure inside the vehicle disproves a violation of section 4524(e)(1). (*See* Appellant's Brief, at 12). It does not.

Actually, the **Brubaker** decision cited several other factors in support of its conclusion of insufficiency. **See Brubaker**, **supra** at 263 (policer officer testified he could see inside vehicle during afternoon stop, but questioned whether interior would be visible at night; officer further testified that tint was "one of the lighter ones[.]"). Seeing a shadowy figure is not *per se* conclusive proof of lack of reasonable suspicion.

Additionally, we assess reasonable suspicion from the totality of the circumstances, not merely from an isolated phrase. **See Wardlow**, **supra** at 124–25. Furthermore, unprovoked flight is a factor which supports the conclusion of reasonable suspicion. **See id.**

In fact, even a mistaken belief that a violation of the Vehicle Code had occurred is enough: "A finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts. Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." **Chase**, **supra** at 120 (internal quotation marks and citations omitted).

Appellant further argues that when the police got within five feet of the vehicle, "any basis for their initial suspicion dissipated," obviating the need for an investigative detention. (Appellant's Brief, at 12). This argument is unavailing. **See Commonwealth v. Vincett**, 806 A.2d 31, 33 (Pa. Super. 2002), *appeal denied*, 816 A.2d 1102 (Pa. 2003) (colorable defense to underlying traffic violation **does not affect validity** of traffic stop;

suppression inquiry analyzed from perspective of police officer, not from perspective of defendant). This conclusion also assumes that the windows were insufficiently tinted to constitute a violation of section 4524(e)(1), a self-serving conclusion not supported by the record.

Finally, Appellant notes that his brother testified that later photographs of the vehicle proved that only the back windows were heavily tinted. (*See* Appellant's Brief, at 9 n.2; *see also* N.T. Motion, 9/23/14, at 13-16). However, in rebuttal, Officer Berkery testified that the photographs did not have the tint which he observed when he initiated the traffic stop the preceding November. (*See* N.T. Motion, 9/23/14, at 17-20).

This undeveloped argument would not merit relief. It was the role of the suppression court, sitting as factfinder, to resolve conflicts in the testimony. The suppression court judge was free to believe all, part, or none of a witness's testimony. *See Commonwealth v. Haslam*, 138 A.3d 680, 687 (Pa. Super. 2016). Also, "[i]t is the sole province of the suppression court, as finder of fact, to weigh the credibility of the witnesses." *Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) (*en banc*) (citation omitted).

Here, we conclude that, viewed in the light most favorable to the Commonwealth, the suppression court's conclusion that the police had specific and articulable facts for a reasonable suspicion that a violation of the

Vehicle Code had occurred, is supported by the record.[2]    Appellant's constitutional rights were not violated.

Judgment of sentence affirmed.

Judge Lazarus joins the Memorandum.

Judge Ransom concurs in the result.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2017

---

[2] Because Appellant only claims that the police lacked reasonable suspicion, we need not address whether the police possessed probable cause, and we decline to do so.  For a comparison of probable cause and reasonable suspicion for the required level of justification in a vehicle stop, **see Commonwealth v. Haines**, 166 A.3d 449, 454 (Pa. Super.2017); **see also Commonwealth v. Salter**, 121 A.3d 987, 992–93 (Pa. Super. 2015); **Commonwealth v. Feczko**, 10 A.3d 1285, 1286 (*en banc*) (Pa. Super. 2010), *appeal denied*, 25 A.3d 327 (Pa. 2011).