2017 PA Super 205

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DOUGLAS NELSON HAINES | |
| Appellant | No. 1316 WDA 2016 |

Appeal from the Judgment of Sentence August 26, 2016
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001731-2015

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

OPINION BY MOULTON, J.:                          **FILED JUNE 30, 2017**

Douglas Nelson Haines appeals from the August 26, 2016 judgment of sentence entered in the Mercer County Court of Common Pleas following his bench trial conviction for driving under the influence ("DUI") – highest rate of alcohol.[1]  We affirm.

The trial court, in disposing of Haines' motion to suppress, set forth the following factual history:

> 2.    On October 3, 2015, [Pennsylvania State Police] Trooper [James] Mason was working the midnight shift.  A second trooper, Yurna,[2] was in the vehicle with him.
>
> 3.    Sometime around 4:00 a.m., Trooper Mason received a dispatch of a possible accident on North Cottage Road in Jackson Township, Mercer County, Pennsylvania.

_____

[1] 75 Pa.C.S. § 3802(c).

[2] Trooper Yurna's first name does not appear in the record.

The caller did not see the accident, nor could the caller identify anyone in the accident. The caller simply reported that he heard what sounded like an accident.

4. Within three to four minutes Trooper Mason arrived at the scene. At some point a second marked cruiser also arrived at the scene.

5. Upon arrival, the troopers discovered a 2012 black Jeep Grand Cherokee that had gone off the road and had skidded into a small wooded area causing moderate damage to the vehicle. Various windows in the vehicle were broken but still intact such that a person could not have been thrown through the window, and several airbags had deployed.

6. The troopers approached the vehicle to determine if someone was hurt or worse. They found no one in the Jeep or in the immediate area.

7. When the troopers investigated the Jeep itself, they saw no signs of blood and could make no determination as to whether or not someone was injured in that accident.

8. Trooper Mason ran the Jeep's registration plate, and it came back to . . . Douglas Nelson Haines, of . . . Grove City, Pennsylvania. Trooper Mason also obtained Haines' driver's license information, which included his physical description and a driver's license photograph.

9. The area of the accident was a dark, rural area with no street lights. Rain was moderate to heavy. The blacktop road was wet. There was very little traffic on this secondary road at the time of Trooper Mason's investigation, although it is possible that the local paper deliveryman had passed.

10. At the scene, Trooper Mason called for a tow truck. The troopers in the second car drove around the surrounding area looking for pedestrians, but no one was located.

11. Trooper Mason waited in his car for a tow truck, sitting in the south bound lane facing north toward the accident, with headlights and emergency light[s] on.

12.    Approximately ten minutes after Trooper Mason arrived at the scene while he was parked in the driveway awaiting the tow truck, he saw in his rearview mirror a vehicle approach.  This vehicle was travelling north in the northbound lane.  Trooper Mason observed the vehicle stop about a half a mile behind (to the south) of where the Trooper's vehicle was located.  The vehicle stopped on the roadway and remained stopped for approximately 10 to 15 seconds.

13.    This vehicle then continued driving in a northerly direction and ultimately passed Trooper Mason.  Because it was dark and raining, the Trooper could not determine who or how many people were in the vehicle.  The car was travelling at an appropriate speed and as it travelled it was not violating the Pennsylvania Motor Vehicle Code.

14.    As this vehicle passed Trooper Mason's position, he observed the car's registration plate and ran the same. The registration came back to a Samuel Haines, showing the owner's address as . . . Latonka Drive in Mercer, Pennsylvania.  The last name "Haines" was spelled the same way as the last name on the owner of the crashed vehicle.  It was Trooper Mason's impression that the second vehicle had pulled up possibly to pick up the operator of the first vehicle.

15.    Once Trooper Mason discovered the name of the registered owner of the vehicle, he effectuated a stop of that vehicle, which took place approximately one half mile north of the accident scene.  The vehicle stopped appropriately.

16.    Trooper Mason observed a female driving the vehicle and an individual in the front passenger seat who he identified as Haines based upon the driver's license picture obtained from running the crashed vehicle's plates.

17.    North Cottage Road provides access to the Lake Latonka area.

18.    Trooper Mason believed he had reasonable suspicion to stop the second car given its proximity to the accident scene, the fact that the car had stopped on the roadway for 10 to 15 seconds, and because the registered

owner's last name was the same last name as that of [Haines].

19. The distance between Grove City and Mercer is approximately nine miles. The distance between Mercer and the Pennsylvania State Police barracks is an additional five miles. Grove City and Mercer are two distinct municipalities.

20. There was no testimony as to the identity of the female driver of the car in which [Haines] was a passenger, that the female driver was authorized to drive this car, or that [Haines] had a possessory interest in the car.

21. Trooper Mason detected an odor of alcohol emanating from the vehicle and asked Haines to exit. Haines lost his balance on the roadway and smelled of alcohol, so Trooper Mason effectuated a field sobriety test which Haines failed.

22. Trooper Mason arrested Haines for D.U.I. and read him Implied Consent, **O'Connell**[3] Warnings, and Mirandized him. Mr. Haines ultimately did admit to being the operator of the vehicle. He said he swerved to miss a deer, and that's how he lost control.

23. At 5:15 a.m., Haines was transported to Grove City Hospital where lab technician Lana Lewis withdrew Haines' blood sample. The sample was sent to the Erie Regional Laboratory, which determined that Haines had a blood alcohol content [("BAC")] of .244%.

. . .

On October 23, 2015, Haines was charged with D.U.I. General impairment (75 Pa.C.S. § 3802(a)(1)) and D.U.I. Highest rate of alcohol (75 Pa.C.S. § 3802(c)). On March 23rd, 2016, Haines filed an omnibus pretrial motion which challenged the constitutionality of the stop and search

---

[3] **Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989).

conducted by Trooper Mason, and requested the suppression of all evidence obtained after the traffic stop.

Trial Ct. Suppression Adj., 6/9/16, at 1-5. On May 4, 2016, the trial court held a hearing on the motion to suppress. On June 9, 2016, the trial court denied the motion to suppress. On June 24, 2016, after a bench trial, Haines was convicted of DUI – highest rate of alcohol; he was acquitted of DUI – general impairment.

On August 3, 2016, Haines filed a motion in arrest of judgment based on the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016). Haines claimed that because the *Birchfield* Court "held that a warrant [is] required to obtain a blood sample in a [DUI] prosecution," and "[Haines'] blood sample [was] obtained . . . without a warrant[,] . . . no charges remain viable against [Haines], and judgment should be arrested."[4] Mot. in Arrest of Judg., 8/3/16, ¶ 4-5, 7. On August 4, 2016, the trial court denied Haines' motion.

On August 26, 2016, the trial court sentenced Haines to incarceration of 90 days to 18 months, followed by six months' probation. In its order, the trial court permitted Haines, after serving time in the Mercer County Jail, to serve the remaining 80 days of his minimum sentence on electronic house arrest and made Haines eligible for work release during his incarceration or

_____

[4] Haines also asserted that "[t]he policy of the District Attorney of Mercer County in the wake of the *Birchfield* case is to withdraw any DUI charges except under [75 Pa.C.S.] § [3802](a), [g]eneral [i]mpairment, in which [Haines] . . . was acquitted." Mot. in Arrest of Judg., 8/3/16, ¶ 6.

house arrest. Further, the trial court granted Haines automatic parole at the conclusion of his minimum sentence if "he has obeyed the rules and regulations of the Mercer County Jail and the house arrest program[.]"[5] Sent. Order, 8/26/16, at 2. On September 1, 2016, Haines timely filed his notice of appeal.[6]

Haines raises two issues on appeal:

1. Was the traffic stop and seizure of the Samuel Haines vehicle based upon "coincidence" constitutionally justified?

2. Did the Sentencing Court err in refusing to Arrest Judgment of the BAC count, based upon the ***Birchfield*** case?

Haines' Br. at 6 (suggested answers omitted).

## I.    Validity of Stop

First, Haines argues that the stop of the second vehicle, registered to Samuel Haines, was unconstitutional. In reviewing the denial of a suppression motion, we must determine

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains

---

[5] On August 31, 2016, the trial court amended its sentencing order to correct a clerical error, modifying the grade of Haines' conviction from "UM" to "M-1." Am. Sent. Order, 8/31/16.

[6] Haines is on bond pending appeal. ***See*** Order, 8/26/16.

uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted). In reviewing the denial of a suppression motion, we may only consider evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013).

## A. Level of Justification Required

In assessing Haines' motion to suppress, we first must determine what level of legal justification was necessary to support the stop in question. Haines, citing *Commonwealth v. Ibrahim*, 127 A.3d 819, 823 (Pa.Super. 2015), *app. denied*, 138 A.3d 3 (Pa. 2016), argues that Trooper Mason needed probable cause to justify the stop. We disagree.

In Pennsylvania, some traffic stops require only reasonable suspicion while others require probable cause. Section 6308(b) of the Vehicle Code sets forth the general rule:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, **or to secure such**

> **other information as the officer may reasonably believe to be necessary to enforce the provisions of this title**.

75 Pa.C.S. § 6308(b) (emphasis added). As we explained in **Ibrahim**, however, section 6308(b) "does not apply in all instances because . . . not all vehicle offenses require further investigation to determine whether a motorist has committed that offense." **Ibrahim**, 127 A.3d at 823. Rather, "some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." **Id.** The required level of justification hinges on whether the stop "serve[s] a stated investigatory purpose." **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa.Super. 2010). If so, then section 6308(b) controls and reasonable suspicion is sufficient. As we said in **Feczko**, "the language of section 6308(b) . . . is conceptually equivalent with the underlying purpose of a **Terry**[7] stop." **Id.**

If, however, "the driver's detention cannot serve an investigatory purpose relevant to the suspected violation[,] . . . [m]ere reasonable suspicion will not justify a vehicle stop[.]" **Id.** As our Supreme Court explained,

> a vehicle stop based solely on offenses not "investigatable" cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry** stop do not exist— maintaining the status quo while investigating is inapplicable where there is nothing further to investigate.

---

[7] **Terry v. Ohio**, 392 U.S. 1 (1968).

An officer must have probable cause to make a constitutional vehicle stop for such offenses.

**Commonwealth v. Chase**, 960 A.2d 108, 116 (Pa. 2008).

We recently shed light on this distinction in **Commonwealth v. Salter**:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

121 A.3d 987, 993 (Pa.Super. 2015).

The situation before us does not fit neatly into the speeding/DUI dichotomy set out in **Salter**. The paradigm cases described by **Salter** and other authority, **see, e.g., Commonwealth v. Sands** 887 A.2d 261, 270 (Pa.Super 2005) (comparing DUI to speeding and running a red light); **Ibrahim**, 127 A.3d at 824 (comparing speeding to travelling the wrong way on one-way street), all involve stopping the vehicle that is suspected of

being involved in the violation. Whether the offense is speeding, failing to stay in a single lane, *see, e.g., Feczko*, or driving the wrong way on a one-way street, *see, e.g., Ibrahim*, no evidence relevant to the offense is likely to be found in the offending vehicle. Accordingly, we have concluded that the rationale of *Terry* – permitting further investigation based on reasonable suspicion – cannot be used to justify the stop.[8] Here, in contrast, we confront not only an offense that may require further investigation but also a stop that sought that information from a place other than the offending vehicle.

Section 3746(a)(2) of the Vehicle Code provides:

> The driver of a vehicle involved in an accident shall immediately by the quickest means of communication give notice to the nearest office of a duly authorized police department if the accident involves:
>
> . . .
>
> (2) damage to any vehicle involved to the extent that it cannot be driven under its own power in its

---

[8] In most instances, the probable cause requirement is easily met based on a police officer's observation of the violation. *See, e.g., Ibrahim*, 127 A.3d at 824 (finding probable cause where officer observed appellant "drive his bicycle westbound on a road that requires all traffic to proceed in the eastbound direction"); *Feczko*, 10 A.2d at 1292 (finding probable cause where trooper's dashboard camera video showed appellant's vehicle touch white fog line and cross yellow center line); *but cf. Commonwealth v. Whitmyer*,, 668 A.2d 1113, 1117-18 (Pa. 1995) (finding no probable cause for speeding where officer paced vehicle for two-tenths of a mile when statute required speed pacing for at least three-tenths of a mile), *superseded on other grounds as recognized by Chase*, 960 A.2d at 112.

> customary manner without further damage or hazard to the vehicle, other traffic elements, or the roadway, and therefore requires towing.

75 Pa.C.S. § 3746(a)(2). Unlike the paradigmatic probable cause cases, this provision will often require investigation beyond mere observation of offending conduct. As this case illustrates, investigating officers may need to determine both whether the vehicle requires towing[9] and, if so, whether its driver had notified or was in the process of notifying the police "by the quickest means of communication," as required by law. **Cf., e.g., Feczko**, 10 A.3d at 1292 (holding that suspected violation of 75 Pa.C.S. § 3309(1), driving in single lane, where officer observed defendant's vehicle touch white fog line and cross center yellow diving line, required probable cause); **Salter**, 121 A.3d at 993-94 (holding that violation of 75 Pa.C.S. § 4303, lighting requirements, required probable cause for stop, as "[n]othing more needed to be determined by [the o]fficer . . . upon a stop to verify that the plate light was not operating").

While under some circumstances a violation of section 3746(a)(2) could be immediately apparent and require no further investigation, such will often not be the case. That the stop here was of a different vehicle does not change our analysis. If Trooper Mason had reasonable suspicion that the Samuel Haines vehicle contained evidence relevant to the possible violation

---

[9] Trooper Mason testified that he was "not sure whether [the vehicle] would have been drivable or not." N.T., 4/8/16, at 4.

at issue, he was authorized to make the stop.[10]  ***Cf. Commonwealth v. Thompson***, 93 A.3d 478, 482-83, 485 (Pa.Super. 2014) (concluding that police had reasonable suspicion to stop vehicle after observing passenger engage in possible narcotics transaction).

### B. Application of Reasonable Suspicion Standard

Next, Haines argues that, even under the reasonable suspicion standard, Trooper Mason lacked adequate justification to stop the second vehicle.  We disagree.

Haines relies on ***Commonwealth v. Andersen***, 753 A.2d 1289, 1294 (Pa.Super. 2000), which held that an officer lacks reasonable suspicion to stop a motor vehicle when he knows only that the **owner** of the vehicle has a suspended license but does not know who is **operating** the vehicle. Haines also asserts that Trooper Mason had no evidence that Haines was related to Samuel Haines, the registered owner of the second vehicle, and highlights the trial court's reference to the identity of surnames a "coincidence."

---

[10] In the section of his brief arguing for a probable cause standard, Haines asserts, without elaboration, that "this offense is not a crime but rather a summary offense."  Haines Br. at 12.  That section 3746 is a summary offense does not affect the level of suspicion required to stop a motor vehicle; rather, it is the nature of the possible violation that determines the required level of suspicion.  ***See Feczko***, 10 A.3d at 1291; ***Salter***, 121 A.3d at 993.

An officer may stop and briefly detain a person for investigatory purposes when that officer has "reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." ***Commonwealth v. Allen***, 725 A.2d 737, 740 (Pa. 1999). "[T]he fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." ***Commonwealth v. Gray***, 784 A.2d 137, 142 (Pa.Super. 2001). We must consider the totality of the circumstances, including such factors as "tips, the reliability of the informants, time, location, and suspicious activity." ***Id.*** (citing ***Commonwealth v. Freeman***, 757 A.2d 903, 908 (Pa. 2000)). "[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, 'even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.'" ***Commonwealth v. Rogers***, 849 A.2d 1185, 1189 (Pa. 2004) (quoting ***Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999)).

We conclude that Trooper Mason had reasonable suspicion to stop the second car. Shortly before the stop, and three to four minutes after the radio report of an accident, Trooper Mason had arrived on the scene to find a vehicle, registered to Haines, crashed in the woods with its airbags deployed. No driver was in sight. The vehicle's windows, while cracked, were intact, so Trooper Mason concluded that no one had been ejected from

the vehicle; accordingly, he instructed other officers to begin canvassing the area. While waiting for a tow truck to arrive, Trooper Mason saw a vehicle approach the accident scene, stop for 10 to 15 seconds in the roadway, and continue up the road. At the time, shortly after 4 a.m., there was no other traffic on the road. When the car passed by Trooper Mason, he could not see inside but ran its license plate and discovered that it was owned by Samuel Haines of Latonka Drive in Mercer. The vehicle was headed in the direction of Lake Latonka. Based on that information, Trooper Mason reasonably suspected that the vehicle might have stopped to pick up the operator of the wrecked vehicle.

When Trooper Mason effectuated the stop, he was investigating a violation of section 3746(a)(2). Under the circumstances, it was reasonable for him to stop the car and briefly detain its occupants in order to determine whether the operator of the crashed vehicle, who had thus far failed to report the accident to police,[11] was now in the second vehicle. That the

---

[11] We have found no appellate case addressing the "immediacy" requirement of section 3746(a)(2). Some common pleas court decisions have construed the term "immediate" to require only substantial compliance. *See, e.g., Commonwealth v. Levan*, 11 Pa.D.&C.3d 186 (Montour Cnty. 1979); *Commonwealth v. Wetmore*, 69 Pa.D.&C.2d 344 (Pike Cnty. 1974). However, "on single-car violations there exists the great potential of a person who may be intoxicated driving on home, sobering up and then, when he is in better condition to be noble, report his accident." *Wetmore*, 69 Pa.D.&C.2d at 346. Further, since these decisions were issued, cell phones and other technologies now allow drivers to report accidents within minutes of their occurrence.

second vehicle (1) stopped on the roadway near the accident, shortly after it occurred (roughly 4 a.m.) and (2) was registered to a person also named Haines who resided not far from the driver of the crashed car, was sufficient to justify the stop. *See Commonwealth v. Zhahir*, 751 A.2d 1153, 1157 (Pa. 2000) (noting that reasonable suspicion requires lesser showing than probable cause "in terms of both quantity or content and reliability") (citing *Alabama v. White*, 496 U.S. 325, 330-31 (1990)).

Haines' reliance on *Andersen* is misplaced. *Andersen* held that police lacked reasonable suspicion to stop a vehicle based on the "mere assumption" that the registered owner of the vehicle, whose driving privileges had been suspended, was driving the car at the time. 753 A.2d at 1294. We expressed our concern in *Andersen* as follows:

> Holding otherwise would subject drivers who lawfully operate vehicles owned or previously operated by a person with a suspended license to unnecessary traffic stops. The example of the family car demonstrates this point. Although a family car may be registered in the name of one individual, numerous additional drivers may be licensed and insured to operate the same vehicle. If we allow the police to stop any vehicle for the mere fact that it is owned or once operated by an individual whose operating privileges are suspended, then each additionally insured driver of the family car could be subject to traffic stops while lawfully operating the family car simply because the license of another operator of the vehicle is suspended.

*Id.* In other words, **Andersen** rejected the notion that a particular vehicle is subject to a stop any time any past driver of that vehicle has a suspended license.[12]

The situation before us is quite different. Trooper Mason had a number of articulable facts to support his reasonable suspicion of a section 3746(a)(2) violation: the car was damaged to the point that police called in a tow truck; police arrived on the scene shortly after the accident to find the driver missing; a car approached the accident scene and stopped for 10 to 15 seconds; the second car was registered to a person with the same last name as Haines, who lived nearby. Based on these facts, Trooper Mason drew the reasonable inference that the operator of the wrecked vehicle, who failed to immediately report the accident to police, may have been in the second vehicle pulling away from the scene.[13]

---

[12] While we distinguish **Andersen** on its facts, we also note that **Andersen** relied on the "articulable and reasonable grounds" standard, which the General Assembly later struck by amending section 6308(b) to "the less stringent standard of 'reasonable suspicion.'" ***See Commonwealth v. Hilliar***, 943 A.2d 984, 990 n.1 (Pa.Super. 2008).

[13] We also reject Haines' argument that the Commonwealth had to provide information on the commonality of Haines' last name in Mercer County. According to Haines, the record does not support the Commonwealth's contention that "it was obviously a relative or friend of . . . Haines driving the [second] vehicle since they were registered to people with the same surname." Haines' Br. at 14. This argument, however, ignores the totality-of-the-circumstances test employed by this Court. This information, viewed together with the rest of the circumstances surrounding Haines' accident, provided Trooper Mason with reasonable suspicion to stop the second vehicle.

## II. Validity of Consent to Blood Draw under *Birchfield*

Next, Haines argues that the trial court erred in denying his post-verdict motion for arrest of judgment based on **Birchfield**.[14] The trial court, treating that motion as one for extraordinary relief, denied it before

---

[14] While we ultimately conclude that Haines' arguments are best addressed through PCRA proceedings, we also note that the trial court could not have addressed Haines' claims through a motion in arrest of judgment. While Haines correctly filed his motion after the verdict, a motion in arrest of judgment is limited to "causes appearing on the face of the record or insufficiency of the evidence." **Commonwealth v. Fitten**, 657 A.2d 972, 973 (Pa.Super. 1995). "Causes appearing on the face of the record include such fundamental defects as lack of jurisdiction, former jeopardy or failure of an indictment or information to charge an offense." **Commonwealth v. Stark**, 584 A.2d 289, 291 (Pa.Super. 1990). In reviewing a motion in arrest of judgment, the trial court must consider all evidence actually received, whether the trial rulings thereon were right or wrong. **Commonwealth v. Jackson**, 302 A.2d 420, 422 (Pa.Super. 1973) (internal quotation marks omitted). Further, a trial court may not separately justify an arrest of judgment in "the interest of justice" where the error does not appear on the face of the record. **Id.** at 422-23. Here, Haines did not challenge the sufficiency of the evidence, nor did he assert an error on the face of the record. Rather, Haines raised a suppression issue well after his filing of an omnibus pretrial motion. Under these circumstances, the trial court could not grant Haines an arrest of judgment because his **Birchfield** issue was not a matter of record and the motion asked the trial court to exclude Haines' BAC results and then reassess the evidence.

We also note that the trial court treated Haines' written motion in arrest of judgment as a motion for extraordinary relief under Pennsylvania Rule of Criminal Procedure 704(B). However, Rule 704(B) motions must be made orally. **See** Pa.R.Crim.P. 704(B)(1). Further, "[a] motion for extraordinary relief [has] no effect on the preservation or waiver of issues for post-sentence consideration or appeal." **See id.** (B)(3). Thus, even if Haines had used the correct procedure and orally moved for extraordinary relief, this Court would not be able to review the issues he raised in that motion.

sentencing on the ground that Haines had failed to raise it in his omnibus pretrial motion. The court reasoned that while **Birchfield** was not decided until the day before the verdict in this case, counsel should have known that **Birchfield** was pending in the Supreme Court and raised the issue before trial. N.T., 8/26/16, at 6-7 (suggesting that Haines' counsel was ineffective for failing to raise **Birchfield** issue before trial). Haines asserts that it was not ineffective to fail to anticipate the Supreme Court's ruling in **Birchfield**, and that a subsequent Post Conviction Relief Act ("PCRA") petition therefore would likely be unsuccessful.[15] Haines Br. at 16-17. For that reason, and because he may have already served his sentence before PCRA relief would be available, Haines asks that we invalidate his conviction now. **Id.** at 17

---

[15] We make no judgment here about whether counsel was ineffective for failing to raise an issue then pending before the Supreme Court. We note, however, that while "counsel cannot be held ineffective for failing to anticipate a change in the law[,]" **Commonwealth v. Cox**, 983 A.2d 666, 702 (Pa. 2009), the issue of blood draws in DUI cases was before the United States Supreme Court at the time Haines filed his omnibus pre-trial motion. **See Birchfield v. North Dakota**, 136 S.Ct. 614 (2015) (granting *certiorari* on December 11, 2015). Thus, Haines' case does not fit into the prototypical situation where counsel is charged with ineffectiveness because he failed to consult the "crystal ball." **See, e.g., Commonwealth v. Williams**, 528 A.2d 980, 982-83 (finding counsel not ineffective for failing to anticipate United States Supreme Court's decision in **Batson v. Kentucky**, 476 U.S. 79 (1986) and mount challenge to jury composition); **but cf. Commonwealth v. Humphrey**, 375 A.2d 717, 719-20 (Pa. 1977) (concluding that counsel was ineffective for failing to object to witnesses' comments on defendant's silence despite lack of binding authority where (1) issue was scheduled to be reargued before the Pennsylvania Supreme Court, (2) several federal courts had decided the issue favorably to defendant, and (3) counsel showed unawareness of current state of Pennsylvania law).

(this Court "should utilize the Rules of Criminal Procedure . . . to arrive at the correct result without unnecessary delay").

Preliminarily, we note that Haines argues that because **Birchfield** requires a warrant for a blood draw, and no warrant was obtained in this case, the results of that blood draw must be suppressed. Haines' Br. at 15. This contention, however, ignores a crucial component of **Birchfield**, which is that even without a warrant the results of a blood draw may be admissible if the defendant gave valid consent. **See Birchfield**, 136 S.Ct. at 2185-86.

Whether consent is valid under **Birchfield** depends on what the consenter was told about the consequences of refusal. **See Commonwealth v. Evans**, 153 A.3d 323, 329-31 (Pa.Super. 2016). Because Haines did not raise his claim before trial, the record does not contain sufficient information from which to determine whether his consent was valid. **See id.** at 331 (remanding for hearing on validity of appellant's consent). As a result, although we are sympathetic to Haines' position, we cannot grant him the relief he requests. His claim is best addressed under the PCRA, when an appropriate record can be developed.

Judgment of sentence affirmed.[16]

---

[16] We note that Haines may have a cognizable ineffective assistance of counsel claim based on trial counsel's failure to file a motion to suppress Haines' BAC results or to address **Birchfield** prior to Haines' trial. At sentencing, the trial court recognized this issue, noting that in the absence of a sentencing deal from the Commonwealth, the court would have to sentence Haines on section 3802(c) and "effectively charge [Haines' counsel]
*(Footnote Continued Next Page)*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2017

_(Footnote Continued)_ ————————

with ineffectiveness," as "***Birchfield*** was pending" in the United States Supreme Court. N.T., 8/26/16, at 7. However, we also acknowledge concern about whether Haines would be able to obtain PCRA relief, if appropriate, due to his short sentence. As the trial court itself noted, Haines may well "serve his sentence by the time he completes the PCRA process." N.T., 8/26/16, at 9. Should Haines file a timely PCRA petition, we encourage the PCRA court to expedite consideration of his petition. Of course, we make no determination as to the merits of Haines' claim, as original jurisdiction in these matters is vested in the court of common pleas. ***See*** 42 Pa.C.S. § 9545(a).