J-S26038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP RANDALL ECKMAN | : | |
| | : | |
| Appellant | : | No. 3774 EDA 2017 |

Appeal from the Judgment of Sentence October 17, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002004-2017

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 23, 2018**

Appellant Philip Randall Eckman appeals from the judgment of sentence entered in the Court of Common Pleas of Chester County on October 17, 2017, following his non-jury conviction[1] of driving under the influence of alcohol (general impairment)[2] and related offenses.[3]  Following a careful review, we affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

> On January 28, 2017, Appellant was stopped by Kennett Township Police Officer Jonathan Ortiz, after Officer Ortiz

---

[1] Appellant entered a guilty plea on August 22, 2017, to 75 Pa.C.S.A. § 3802(a)(1); however, on August 30, 2017, he filed his Motion for Withdrawal of Guilty Plea Pursuant to Pa.R.Crim.P. Rule 591, and he later proceeded to a stipulated fact trial.
[2] 75 Pa.C.S.A. § 3802(a)(1).
[3] Appellant was cited for violating 75 Pa.C.S.A. §§ 3301(a) (driving on right side of roadway) and 3334(b) (turning movements and required signals).

---

*   Former Justice specially assigned to the Superior Court.

observed Appellant driving northbound in the southbound lane of Greenwood Road. On June 30, 2017, Appellant was charged with driving under the influence of alcohol, failure to drive on the right side of the roadway and failure to give an appropriate signal of intention to turn left or right. On July 12, 2017, Appellant filed a motion to suppress, claiming that the original stop of his vehicle on January 28, 2017 was illegal. We held a hearing on Appellant's motion on August 22, 2017, after which we denied his motion to suppress. On October 18, 2017, after a stipulated fact trial, we found Appellant guilty of one count of driving under the influence of alcohol, 2nd offense, 3rd tier, 75 Pa. C.S.A. § 3802, and sentenced him to serve fifteen days in prison.

\*\*\*

At the suppression hearing held on August 22, 2017, the Commonwealth presented the testimony of Officer Jonathan Ortiz of the Kennett Township Police Department. Officer Ortiz testified that he was on routine patrol on the evening of January 28, 2017, in full uniform and driving a marked police vehicle. At approximately 11:09 p.m., as Officer Ortiz was driving southbound in the 400 Block of Greenwood Road, he observed Appellant's vehicle driving towards him in the wrong lane of traffic. N.T. 8/22/17, pp. 6, 9. Officer Ortiz testified that he was forced to come to nearly a complete stop in order to avoid a collision with Appellant. N.T. 8/22/17, p. 17. Officer Ortiz testified that Appellant's vehicle maneuvered around the Officer's patrol car, and then returned to driving in the wrong lane of travel. N.T. 8/22/17, p. 6. Officer Ortiz made a U-turn to follow Appellant, and observed that Appellant was still driving in the wrong lane of traffic. N.T. 8/22/17, p. 7. When Officer Ortiz activated his emergency lights to initiate a traffic stop, Appellant failed to stop his car in response, and only responded after Officer Ortiz had activated his siren. N.T. 8/22/17, pp. 12-15, 20.

Trial Court Opinion, filed 12/15/17, at 1-3.

Appellant filed a timely notice of appeal on November 14, 2017. On November 20, 2017, the trial court directed Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on December 7, 2017. In his appellate brief, Appellant presents the following Statement of Question Involved:

Did the trial court err in denying Appellant's motion to suppress evidence recovered following an automobile stop where the Commonwealth's own video evidence failed to establish probable cause that Appellant had committed a violation of the Motor Vehicle Code and the officer's testimony was not sufficient to establish that such a violation had occurred?

Brief for Appellant at 2.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa.Super. 2012), appeal denied, 619 Pa. 721, 65 A.3d 413 (2013)(quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa.Super. 2012)).

Herein, while Appellant states it is uncontested that Officer Ortiz stopped Appellant's vehicle on his belief that Appellant had violated 75 Pa.C.S.A. § 3309(1), he avers the video from Officer Ortiz's dashboard video camera, admitted into evidence at the suppression hearing, contradicts the testimony the officer provided at that time. Brief for Appellant at 12, 18. Appellant reasons that because there had been no investigatory purpose to the traffic

stop, Officer Ortiz needed probable cause to believe Appellant had committed a violation of the Motor Vehicle Code before he followed Appellant. *Id*. at 14.[4] (citing **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa.Super. 2010)(*en banc*), appeal denied, 25 A.3d 327 (Pa. 2011)). Appellant also claims that the suppression court's findings are not supported by the record because it accepted Officer Ortiz's "conclusory testimony in spite of its obvious conflict with the objective video evidence presented" and unlike the trial court in **Feczko**, failed to make an effort to synthesize the evidence. *Id*. at 15. In the alternative, Appellant concludes that the lack of evidence presented by the Commonwealth dictates that Officer Ortiz's testimony did not constitute "specific and articulated facts" that would support a finding of reasonable suspicion, were that the applicable standard according to which he was authorized to stop Appellant's vehicle. *Id*. at 20.

In considering the present case, we must first determine whether Officer Ortiz needed probable cause or reasonable suspicion to stop Appellant's vehicle. In **Commonwealth v. Haines**, 166 A.3d 449 (Pa.Super. 2017), appeal denied, ____Pa. _____, 176 A.3d 233 (2017) a panel of this Court reiterated the parameters for this determination as follows:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code

---

[4] The Commonwealth also posits Officer Ortiz needed probable cause to stop Appellant's vehicle. Commonwealth's Brief at 7.

has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

*Id*. at 455 (quoting **Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa. Super. 2015)).

In **Feczko**, **supra**, this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." *Id*. at 1291. Therein, the police officer several times observed the defendant's vehicle cross over the double yellow median line and the fog line. *Id*. at 1286. During the ensuing vehicle stop, the officer smelled alcohol on the defendant's breath; however, the officer did not testify that the stop was based on suspicion of DUI. *Id.*

The defendant ultimately was convicted of DUI and a Vehicle Code violation, and he argued on appeal that the vehicle stop was illegal. This Court noted the distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the vehicle code. *Id*. at 1288-89 (citing **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. **See id.** Therefore, we held that:

a vehicle stop based solely on offenses not "investigable" cannot be justified by a mere reasonable suspicion, because the purposes of a ***Terry***[5] stop do not exist-maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

***Feczko***, ***supra*** at 1290 (quoting ***Commonwealth v. Chase***, 599 Pa. 80, 94, 960 A.2d 108, 116 (2008)).  ***See also Commonwealth v. Enick***, 70 A.3d 843, 846 (Pa.Super. 2013) (finding a police officer has probable cause to conduct a vehicle stop for a violation of 75 Pa.C.S.A. § 3301[6] after observing the vehicle cross the double yellow line a single time).

---

[5] ***Terry v. Ohio***, 392 US. 1 (1968).
[6] Section 3301 of the Vehicle Code entitled Driving on right side of roadway instructs, in relevant part:

### § 3301. Driving on right side of roadway

**(a) General rule.**—Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:
(1) When overtaking and passing another vehicle proceeding in the same direction where permitted by the rules governing such movement.
(2) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.
(3) When and where official traffic-control devices are in place designating a lane or lanes to the left side of the center of the roadway for the movement indicated by the devices.
(4) Upon a roadway restricted to one-way traffic.
(5) When making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (relating to required position and method of turning).

In this case, relying upon *Feczko*, the suppression court reasoned that Officer Ortiz possessed both reasonable suspicion and probable cause to believe Appellant was in violation of the Vehicle code to justify the vehicle stop. Officer Ortiz stopped Appellant's vehicle because of his driving in the opposite lane of travel; therefore, the officer suspected Appellant committed a violation of 75 Pa.C.S.A. § 3301(a)(5), which mandates "a vehicle shall be driven upon the right half of the roadway except ... [w]hen making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (related to required position and method of turning)." Because it was not necessary to stop Appellant's vehicle to determine whether he violated Section 3301(a), we find Officer Ortiz needed to possess probable cause that a violation occurred in order to stop Appellant. *Salter,* 121 A.3d at 993; *Enick,* 70 A.3d at 846 (police officer needed probable cause to stop vehicle for suspected violation of Section 3301, because stop would serve no investigatory purpose).

"The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable

---

(6) In accordance with section 3303(a)(3) (relating to overtaking vehicle on the left).

75 Pa.C.S.A. § 3301(a).

caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." ***Commonwealth v. Hernandez***, 594 Pa. 319, 335, 935 A.2d 1275, 1284 (2007) (citations and quotation marks omitted). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." ***Salter***, ***supra***, 121 A.3d 987, 994 (Pa.Super. 2015) (citation omitted).

At the suppression hearing, Appellant sought to discredit Officer Ortiz's testimony with footage from the Motor Vehicle Recording System (MVR) of the officer's vehicle. Officer Ortiz testified that as he was traveling southbound in the 400 Block of Greenwood Road, he observed a pair of headlights approaching in his lane of travel. He explained that as he got closer, "the vehicle maneuvered around [his] car into the northbound lane, and as [he] looked in [his] rearview mirror [he] observed it move[d] back into the southbound lane. [He] conducted a U-turn, and still observed the vehicle still traveling in the southbound lane, and then it weaved back into the northbound lane." N.T., 8/22/17, at 6-7. Officer Ortiz described the road as a two-lane "back road" divided by a double yellow line. Officer Ortiz stated that video taken from the MVR accurately depicted "some of the events" he observed that evening. ***Id***. at 10.

The MVR was played for Officer Ortiz and periodically paused so that he could answer questions posed by counsel as well as those by the suppression court with regard thereto. Officer Ortiz agreed that another vehicle passed his police car before Appellant's. *Id*. at 11. Upon observing Appellant in the wrong lane of travel, Officer Ortiz immediately made a U-Turn and began following Appellant. *Id*. at 13, 17. Officer Ortiz observed no obstructions in the roadway that would have necessitated Appellant's moving in the opposing lane of travel. *Id*. at 20.

Officer Ortiz activated his emergency lights and sounded his siren several times, although Appellant did not pull off the road despite several clear places in which to do so. *Id*. at 14. As Appellant continued driving, his left tire drove on and slightly over the double yellow times several times. *Id*. at 14-15. Prior to the time in which Appellant ultimately pulled into the Greenwood parking lot, he failed to use his turn signal. *Id*. at 15.

Officer Ortiz explained he could see the headlights more clearly in his lane of travel than they appeared on the MVR due to the effect of what the Commonwealth called "lens flare" thereon. *Id*. The suppression court specifically asked whether what Officer Ortiz was able to observe with his eyes was more or less clear than that which is depicted on the MVR, to which the officer responded his vision was clearer than the recording. *Id*. at 16. The following exchange ensued:

> The Court: How do you know he was in your lane of travel? I mean, I can't discern that from looking at the video because the

headlights are glaring, and I can't tell which lane he's in. How could you tell which lane he was in?

[Officer Ortiz]: Because my eyes didn't receive the glare the same as the windshield, the windshield and the camera glare off the headlights.

The Court: But you're sure he was in your lane of travel?

[Officer Ortiz]: Yes. You can actually see me slow down which is the reason why I almost came to a complete stop.

The Court: In order to avoid what?

[Officer Ortiz]: In order to avoid a collision.

*Id*. at 16-17.

Officer Ortiz explained that the MVR, a straightforward facing camera, does not depict what he was able to see- namely, that when Appellant's vehicle approached his, it was in the southbound lane traveling northbound, which is an illegal maneuver. *Id*. at 18. The Officer witnessed this before he activated his emergency lights, and at the time he did so, he had observed two violations of the vehicle code. *Id*. at 19. In addition, Appellant did not pull over immediately upon seeing the emergency lights. *Id*. at 20.

The suppression court commented that due to the "glaring lights," it was unable to determine from the video in which lane Appellant was traveling as he approached Officer Ortiz "until it got very close and actually passed the police officer." *Id*. at 31. Nevertheless, it stressed that Officer Ortiz had testified that Appellant's vehicle was in the wrong lane as it approached his police car. *Id*. at 32. The suppression court further observed that the video showed that after Officer Ortiz turned around, the tires of Appellant's vehicle momentarily crossed the center line "once or twice." *Id*. at 34. The suppression court agreed with defense counsel that due to the glaring lights

depicted thereon, the MVR did not establish a vehicle code violation, but the officer's testimony did, were it to find that testimony to be credible.

At the end of the hearing, the suppression court did, in fact, find Officer Ortiz to be credible and applying the relevant law to the facts of this case denied Appellant's suppression motion. *Id*. at 32-33, 36. The suppression court reiterated Officer Ortiz had testified "his vision of what occurred was better than what can be seen on the video" and that "the video showed that the police officer turned around almost immediately after [Appellant's] vehicle passed, him which corroborates the officer's statement and testimony that he believed that [Appellant] was traveling in the wrong lane of traffic for the direction that he was heading." *Id*. at 35-36.

In its Rule 1925(a) Opinion, the court further explained:

We credited Officer Ortiz's testimony that Appellant's vehicle was driving in the wrong lane of travel on the evening of January 28, 2017. Accordingly, we found that the stop of Appellant's vehicle was permissible pursuant to section 6308(b) of the Motor Vehicle Code, was supported by reasonable suspicion and by probable cause, and was legal. We can conceive of no more blatant example of a Motor Vehicle Code violation that driving one's vehicle, over a double yellow line, in the wrong lane of traffic.

Trial Court Opinion, 12/15/17, at 3.

After reviewing the MVR, the testimony presented at the suppression hearing and the trial court's opinion, we find both that the evidence supports the court's factual findings and there is no mistake in its legal conclusion. We disagree that the video in question so clearly contradicts Officer Ortiz's testimony that he initially observed Appellant traveling in the opposing lane

- 11 -

of travel to the extent that we would be compelled to reject the trial court's credibility determination. *Compare Commonwealth v. Griffin,* 116 A.3d 1139, 1143 (Pa.Super. 2015) (reversing the trial court's denial of suppression on the basis that an officer's testimony alleging the lawfulness of the at-issue seizure of contraband was clearly contradicted by video evidence stating "[t]his is one of those rare cases where a dash cam video, which was made a part of the certified record, can contradict a trial court's factual finding often based on its credibility determinations."). In fact, our review of the MVR confirms this testimony.

While the glare cast from Appellant's headlights does limit the ability to discern precisely the location of Appellant's vehicle as it approached Officer Ortiz's, the MVR clearly does show Officer Ortiz was forced to take the evasive action of slowing down as Appellant advanced and that he promptly turned around to follow Appellant. Upon considering this footage coupled with Officer Ortiz's testimony, the suppression court deemed the officer to be credible. Credibility determinations are within the sole province of the trial court *Commonwealth v. Gallagher*, 896 A.2d 583, 584 (Pa.Super. 2006). Because the trial court's factual findings are supported by the record, "we are bound by those findings." *Commonwealth v. Ibrahim*, 127 A.3d 819, 822 (Pa.Super. 2015), appeal denied, 635 Pa. 771, 138 A.3d 3 (2016). Therefore, we find no basis upon which to disturb the suppression court's order and that it did not err in denying Appellant's motion to suppress because the police had

probable cause to stop Appellant's vehicle.  ***See Commonwealth v. Holton***, 906 A.2d 1246, 1249 (Pa.Super. 2006), appeal denied, 591 Pa. 697, 918 A.2d 743 (2007).  For the foregoing reasons, we hold the traffic stop of Appellant's vehicle was legal and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/18