J-S02023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
     :   PENNSYLVANIA
     :
     v.           :
     :
     :
SAMUEL IJAH STEWART     :
     :
     Appellant     :   No. 1334 EDA 2023

Appeal from the Judgment of Sentence Entered May 10, 2023
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000300-2022

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:        **FILED FEBRUARY 13, 2024**

Samuel Ijah Stewart (Appellant) appeals from the judgment of sentence entered following his non-jury convictions of driving under the influence (DUI) (Controlled Substance Impaired Ability)[1] and related traffic offenses. Appellant claims the suppression court[2] erred in denying his motion to suppress evidence seized from the stop of his vehicle. After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(2). The trial court convicted Appellant of additional counts of DUI, which merged with the instant offense for sentencing purposes.

[2] Although President Judge Margherita Patti Worthington presided over Appellant's trial, Judge Arthur L. Zulick adjudicated his suppression claim.

On June 12, 2021, police stopped Appellant as he was operating his motorcycle. As a result of the stop, police subsequently charged Appellant with DUI and related offenses. On July 14, 2022, Appellant filed a *nunc pro tunc* omnibus pretrial motion challenging the legality of the traffic stop.[3] The trial court conducted a hearing on September 27, 2022, at which the following evidence was presented:

> The Commonwealth called Pennsylvania State Trooper Jeffrey Miller as its only witness. Trooper Miller testified that he was on patrol … in Stroudsburg after the beginning of his 2300 to 0700 shift at the intersection of Ninth and Main Streets[,] when he saw a light-colored motorcycle proceed through a steady red light at a high rate of speed. It was going east on Main. [Trooper Miller] waited for traffic to clear because the light he was facing was going from green to red. He then put on his emergency lights and siren and proceeded down Main Street in pursuit of the motorcycle. He briefly lost sight of the motorcycle.
>
> [Trooper Miller] proceeded three blocks east on Main Street, traveling between 40 and 50 miles per hour through two additional lights[,] and came upon [Appellant on] a light-colored motorcycle doing a U-turn on Main[,] at the traffic light at the intersection of Sixth and Main[,] from the eastbound lane to the westbound lane. At the same location, another light-colored motorcycle was backing out of a parking space on the north side of Main Street just west of the intersection. That driver fled [] the scene at a high rate of speed, travelling westbound on Main Street. Trooper Miller stopped the motorcycle doing the U-turn and made contact with the driver, who was [Appellant]. Trooper Miller immediately detected the odor of marijuana and alcohol emanating from [Appellant's] breath and body.

---

[3] In his motion, Appellant argued "[t]he stop lacked reasonable suspicion **or probable cause**." Omnibus Motion *Nunc Pro Tunc*, 7/14/22, at ¶ 26 (emphasis added).

Trial Court Opinion, 7/12/23, 2-3 (some capitalization modified).  At the conclusion of the hearing, the suppression court denied Appellant's motion, determining "the police had reasonable suspicion to stop [Appellant] to investigate the red[-]light infraction, and then probable cause to arrest him for [DUI] after the further investigation at the scene of the stop." *Id.* at 5.

Appellant proceeded to a non-jury trial on March 6, 2023, whereupon he was convicted by the trial court of DUI (Controlled Substance Impaired Ability) and related traffic offenses. *Id.* at 1.  On May 10, 2023, the trial court sentenced Appellant to 72 hours to 6 months' incarceration for the DUI, as well as fines for the traffic offenses. *Id.*  Appellant filed a timely appeal.  Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues[4]:

---

[4] In his brief, Appellant asserts police did not have "probable cause to illegally extend the traffic stop beyond the mission of issuing a citation for the alleged traffic offense."  Appellant's Brief at 19.  Appellant neither included this issue in his court-ordered Pa.R.A.P. 1925(b) concise statement, nor did he meaningfully develop this issue in his brief.  Accordingly, the issue is waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a Rule 1925(b) statement will be deemed waived"); *Commonwealth v. Taylor*, 277 A.3d 577, 591 (Pa. Super. 2022) ("It is not this Court's duty to develop arguments for an appellant.")  Even if Appellant had preserved this issue, the record clearly established police "immediately detected the odor of marijuana and alcohol emanating from [Appellant's] breath and body." N.T., 9/27/22, at 16.  Consequently, Appellant's argument would fail. *See Commonwealth v. Sloan*, 303 A.3d 155, 166 (Pa. Super. 2023) (holding the odor of burnt marijuana, *inter alia*, established reasonable suspicion to prolong a traffic stop); *Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006) (holding the odor of alcohol, *inter alia*, sufficient to justify DUI arrest).

I.      Whether the lower court erred when it denied the Appellant's suppression motion when the record shows the police's traffic stop was devoid of reasonable suspicion or probable cause in violation of the Fourth Amendment of the United States Constitution and Article I[,] Section 8 of the Constitution of the Commonwealth of Pennsylvania? ….

II.      Whether the lower court erred when it did not, after a hearing, suppress evidence against the Appellant when the record shows the police conducted a traffic stop on the basis of misidentification and error? .…

Appellant's Brief at 5.  Because these claims are related, we consider them together.

Appellant's challenges the trial court's denial of his suppression motion.  Our review

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*.  Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.  Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa. Super. 2022) (quoting *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017)).  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 6 A.3d 373, 378 (Pa. Super. 2013).  "We are highly deferential to the suppression court's factual findings and credibility

determination[s]." ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1123 (Pa. Super. 2021). "If the record supports the suppression court's findings, we may not substitute our own findings." ***Id.***

Appellant argues the suppression court "impermissibly accepted facts that are unsupported by the record." ***Id.*** at 30. He contends the suppression court's failure to accept his misidentification defense led to the erroneous conclusion that Trooper Miller's traffic stop was supported by the requisite quantum of cause. Appellant's Brief at 28-31.

Where a defendant files a motion seeking to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); ***see also id.***, Comment (stating that the standard of proof is a preponderance of the evidence).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. ***See Commonwealth v. Thompson***, 289 A.3d 1104, 1107 (Pa. Super. 2023). A traffic stop constitutes a "seizure" within this framework. ***See Commonwealth v. Malloy***, 257 A.3d 142, 147 (Pa. Super. 2021).

The requisite cause required for a traffic stop is settled:

> If a police officer possesses reasonable suspicion that a violation of Pennsylvania's Motor Vehicle Code (MVC) is occurring or has occurred, he may stop the vehicle involved for the purpose of obtaining information necessary to enforce the provisions of the MVC. Reasonable suspicion is a relatively low standard and depends on the information possessed by police and its degree of

reliability in the totality of the circumstances. In order to justify the stop, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the MVC. The standard for assessing whether a given set of observations constitutes reasonable suspicion is an objective one, based on the totality of the circumstances.

However, we have further explained:

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. ... **If it is not necessary to stop the vehicle to establish that a violation of the MVC has occurred, an officer must possess probable cause to stop the vehicle.**

To establish probable cause, the officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the MVC.

***Commonwealth v. Shaw***, 246 A.3d 879, 883-84 (Pa. Super. 2021)

(brackets, paragraph breaks, quotation marks, and internal citations omitted;

emphasis added).

Instantly, Trooper Miller testified that he observed Appellant drive

through a steady red light. **See** N.T., 9/27/22, at 13, 38. Indeed, the

suppression court specifically determined Trooper Miller "had reasonable

suspicion to stop [Appellant] to investigate the red[-]light infraction[.]"[5]

_____

[5] Appellant states throughout his brief that Trooper Miller stopped him for the additional traffic offense of making an illegal U-turn. **See** Appellant's Brief at 10, 11, 16, 25, 28. Although Trooper Miller indicated that Appellant "related he made an illegal U-turn on Main St[reet]," Affidavit of Probable Cause, 8/20/21, at 1, the Commonwealth elicited no testimony that the U-turn was
*(Footnote Continued Next Page)*

- 6 -

1925(a) Opinion, 7/12/23, at 5. The statute governing red-light infractions provides in pertinent part:

> **(a) General rule.--**Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and the lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
>
> > **(3) Steady red indication.--**
> >
> > > (i) Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in subparagraph (ii).
> > >
> > > (ii) Unless signing is in place prohibiting a turn, vehicular traffic facing a steady red signal may enter the intersection to turn right, or to turn left from a one-way highway onto a one-way highway after stopping as required by subparagraph (i). Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.

75 Pa.C.S.A. § 3112(a)(3)(i-ii).

---

made unsafely or that it interfered with other traffic. **See** 75 Pa.C.S.A. § 3332(a) ("The driver of any vehicle shall not turn the vehicle so as to proceed in the opposite direction unless the movement can be made in safety and without interfering with other traffic."). We may not, therefore, conclude that the U-turn was unlawful such to give rise to probable cause to effectuate a traffic stop. **See Commonwealth v. Green**, 265 A.3d 541 (Pa. 2021) ("When the sole issue on appeal relates to a suppression ruling, our review includes only the suppression hearing record.")

Although it appears this Court has not specifically addressed the level of suspicion needed to stop a vehicle for violation of 75 Pa.C.S.A. § 3112, we previously stated in *dicta* that

> it is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation. Similarly, if **an officer who observes a driver run a red light** or drive the wrong way on a one-way street, the officer **either does or does not have probable cause to believe there has been a violation of the Vehicle Code**. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's determination.

***Commonwealth v. Sands***, 887 A.2d 261, 270 (Pa. Super. 2005) (emphasis added); ***see also Commonwealth v. Chase***, 960 A.2d 108, 115 (Pa. 2008) (quoting the above language and observing, "[t]his logic is correct"). ***Cf. Commonwealth v. Haines***, 166 A.3d 449, 455 (Pa. Super. 2017) ("Whether the offense is speeding, failing to stay in a single lane, or driving the wrong way on a one-way street, no evidence relevant to the offense is likely to be found in the offending vehicle." (citations omitted)).

Consistent with the foregoing, we conclude that Trooper Miller required probable cause to stop Appellant for violating Section 3112(a)(3). Trooper Miller's detention of Appellant could not have served an investigatory purpose that would "yield any more evidence to aid in [his] determination" of whether Appellant proceeded through a steady red light. ***See Shaw***, 246 A.3d at 884.

Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in

the belief that an offense has been or is being committed." *Commonwealth v. Stultz*, 114 A.3d 865, 883 (Pa. Super. 2015).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations, quotations, quotations marks, and emphasis omitted). "[W]e must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act." *Commonwealth v. Dennis*, 612 A.2d 1014, 1016 (Pa. Super. 1992) (citation omitted).

At the suppression hearing, Trooper Miller testified that he "observed a light in color motorcycle proceed through a steady red light at a high rate of speed," traveling east on Main Street. N.T., 9/27/22, at 13. He initially lost sight of the motorcyclist. *Id.* at 15. Once it was safe to do so, he proceeded down Main Street, with emergency lights and siren activated, to engage the motorcyclist. *Id.* at 14. Trooper Miller testified the red-light infraction was his basis for activating his lights and siren. *Id.* at 29-30.

Trooper Miller testified he observed two motorcycles "together at the intersection of Main Street, just west of its intersection with North 6th Street."

*Id.* at 14. One of the motorcycles "was backing out of a parking stall." *Id.* The motorcycle operated by Appellant "wasn't coming from a parking stall. It was coming westbound, as if it would've made a U-turn." *Id.* at 28. Both motorcycles were facing west on Main Street. *Id.* at 14. Upon the officer's approach, the motorcyclist exiting the parking stall fled west at a high rate of speed. *Id.* at 14-15. Trooper Miller noted that his body camera video showed the motorcyclist leaving the parking stall "moving his feet back and forth, back and forth[.]" *Id.* at 33. He explained that motorcycles "don't go in reverse; the operator has to physically move the motorcycle." *Id.* Based on the totality of the circumstances, Trooper Miller concluded that Appellant was the operator of the vehicle that he initially observed pass through the steady red light. *Id.* at 17, 38.

Although the suppression court applied the incorrect level of suspicion, the court credited the testimony and inferences drawn by Trooper Miller:

> [The court] saw the Trooper's vehicle accelerate to a high rate of speed down Main Street, and then what could be seen on the MVR was that [Appellant] was guiding his motorcycle with what may very well have been a U-turn -- although on the MVR [the court] couldn't tell that it was a complete U-turn -- but [the court] could see his motorcycle moving to westbound from some other direction before westbound. Trooper Miller, at that point, had reasonable suspicion that [Appellant] was [the] motorcyclist that he was chasing, and then on the MVR, you see the other motorcyclist backing out. **[The court] can accept Trooper's explanation and understanding at that point that the motorcyclist that was backing out wouldn't have had time to get down there, pull in, stop, and then back the vehicle out. So it was more likely to him that the offending motorcycle was the one that was driven by [Appellant]**.

N.T., 9/27/22, at 52 (emphasis added).  We discern no abuse of the suppression court's discretion in crediting the testimony of Trooper Miller.  **See Commonwealth v. Luczki**, 212 A.3d 530, 542 (Pa. Super. 2019) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.").

Keeping in mind the suppression court's credibility determinations, the record confirms Trooper Miller had probable cause to stop Appellant for violating Section 3112(a)(3).  **See Commonwealth v. Jones**, 668 A.2d 114, 117 (Pa. 1995) ("The totality of circumstances test was adopted to do away with rigid, precise determinations of probable cause.").  Accordingly, neither of Appellant's issues merit relief.  We therefore affirm the suppression court's order denying Appellant's suppression motion, albeit on different grounds than those relied upon by the suppression court.  **See Commonwealth v. Gatlos**, 76 A.3d 44, 62 n.14 (Pa. Super. 2013) ("We may affirm the trial court's determination on any grounds…." (citation omitted)).

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/13/2024

- 11 -